595 P.2d 170

**STATE of Arizona, Appellee,**

v.

**Alex Romero PADILLA, Appellant.**

**No. 4537.**

Supreme Court of Arizona,
En Banc.

May 9, 1979.

John A. LaSota, Jr., former Atty. Gen., Robert K. Corbin, Atty. Gen., by William J. Schafer, III, and Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Terry J. Adams, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

Alex R. Padilla appeals from a judgment of conviction of two counts of sale of a narcotic drug and from another judgment of conviction of one count of sale of a narcotic drug. The two appeals were consolidated. He has two prior convictions for possession of a narcotic drug. He was sentenced to twenty to sixty years on each sales conviction, to run concurrently. We have jurisdiction pursuant to 17A A.R.S. Supreme Court Rules, rule 47(e)(5). We affirm both judgments of conviction and both sentences.

Padilla raises three issues on appeal:

1. Whether the trial court's refusal to hold a *Dessureault* hearing before the first of Padilla's two trials was error;

2. Whether prior bad-act testimony at the first trial denied Padilla a fair trial; and

3. Whether prior bad-act testimony at the second trial denied Padilla a fair trial.

Both of the convictions before us arise from the following facts. In July, 1977, Officer Hernandez and Officer Morales, working undercover, contacted a man known to them as "Griffo" and asked to purchase heroin. They successfully obtained a package of powder from him which a criminalist later determined to be heroin. Subsequently, they were told by another officer that Griffo's real name was Alex Padilla. In order to confirm that information, the officers obtained a picture of Padilla, in a sealed envelope, from their identification department and delivered it to another officer who put together a photo lineup which included the photo of Padilla. The officers then picked out Padilla's photo.

In August, Officer Hernandez and another officer, Officer Madrid, contacted Padilla again and purchased a substance from him that was later found to be heroin. In October, the same two officers were again successful in purchasing a quantity of heroin from Padilla. He was subsequently arrested and charged by indictment with two counts of sale of a narcotic drug and by separate indictment with one count of sale of a narcotic drug. The first indictment (relating to the August and October sales) was tried and resulted in a conviction on both counts. The second indictment (relating to the July sale) was tried and also resulted in a conviction.

### DESSUREAULT HEARING

■ Prior to the first trial (relating to the August and October sales), Padilla moved for a hearing pursuant to *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied*, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970), to determine whether the expected in-court identifications of Padilla by the police officers were tainted by the photo lineup that occurred in July. The motion was denied and the officers were allowed to make the in-court identification. Padilla alleges error.

The purpose of a *Dessureault* hearing is to examine the circumstances of a post-crime/pretrial lineup identification by a person who witnessed the criminal activity that is before the court. *Dessureault* simply does not apply when a lineup is conducted before the crime occurs. Thus, a *Dessureault* hearing to examine the suggestiveness of a July lineup was not required before the trial of the counts relating to the subsequent August and October sales. We find no error.

### BAD–ACT TESTIMONY

■ Padilla next claims that the state improperly elicited certain testimony at both trials which allegedly implied the existence of prior bad acts. At the first trial one of the officers indicated that he had had contact with Padilla and had seen a photograph of him before the August and October sales. He also testified that he had asked Padilla for some heroin and Padilla responded "Do you want another one?" The officer also indicated that customarily his duties as an undercover officer consisted of making purchases from "known dealers."

Padilla argues that all of these statements taken together constitute an impermissible reference to prior bad acts, that even if admissible there was not enough evidence of the acts to get them to a jury, and that he was therefore denied a fair trial by their occurrence. We disagree.

Padilla had given notice of a defense of mistaken identity. The testimony regarding prior bad acts was admissible as an exception to rule 404(b), Arizona Rules of Evidence, since it tended to prove the accuracy of the identification of Padilla by the officers. Presumably the alleged prior bad acts testimony generally referred to the July sale and the circumstances surrounding it. Since there was a subsequent conviction based on that event, the prior bad act evidence met the additional evidentiary requirements of *State v. Marahrens*, 114 Ariz. 304, 560 P.2d 1211 (1977).

During the second trial, certain testimony was elicited by the state which Padilla also characterizes as evidence of prior bad acts. We simply do not believe it can be so labeled. The following are the excerpts to which Padilla now objects.

Q. [By the prosecutor] . . . You've indicated that the individual that you handed the money to and the individual that handed you the item of evidence is the defendant Padilla. Have you ever seen him since this incident?

A. [By Officer Morales] I saw him, yes.

Q. Okay. How many times would you say since the incident that you have seen him?

A. Approximately ten times.

Q. And where were you? Without giving the exact location, basically where were you when you saw him?

A. Southeast part of town.

Q. And what were you doing down in that part of town?

A. Purchasing heroin.

. . . . .

Q. [By the prosecutor] You have indicated that this individual seated at the defense table, Mr. Padilla, is the individual that handed this packet to Detective Morales. Was this the only time that you have ever seen him, that one day?

A. [By Officer Hernandez] No, it wasn't.

Q. Describe how long you worked in this part of town as an undercover officer?

A. I have worked in that area of the south Phoenix area, for approximately three years and have come in contact with a lot of people in that area.

Q. Okay. When you work as an undercover officer what type of things do you do down there?

A. The type of things we do is we go in and we associate with these people and—

. . . . .

Q. Okay. You have indicated that you have worked in south Phoenix undercover for a considerable period of time. How many times when you're in south Phoenix did you see Mr. Padilla besides this one day?

A. I saw him on numerous occasions. I can't be exact, but there were quite a few times.

We find it very difficult to classify this testimony as references to prior bad acts. Even assuming it is, Padilla gave notice of mistaken identity as a defense. Therefore, the above testimony is admissible as an exception to rule 404(b), as above. Similarly, if these were references to bad acts, they probably referred to acts for which Padilla had already been convicted, thus satisfying *State v. Marahrens, supra.* If they referred to other bad acts, we do not think there is a reasonable probability that had they not occurred the verdict would have been different. *State v. Williams,* 107 Ariz. 262, 485 P.2d 832 (1971). The evidence at trial was overwhelming. Two police officers gave eyewitness testimony of the sale. A criminalist testified that the substance purchased was heroin. Padilla called no witnesses nor did he testify. We find no reversible error.

The judgments of conviction and the sentences are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.