622 P.2d 3

**STATE of Arizona, Appellee,**

v.

**Michael MARTINEZ, Appellant.**

**No. 5090.**

Supreme Court of Arizona, In Banc.

Dec. 4, 1980.

445

Robert K. Corbin, Atty. Gen., by William J. Schafer, III, and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by John Foreman, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Justice.

Defendant, Michael Martinez, on 26 October 1979, was convicted by a jury of the crime of armed robbery, a dangerous offense, in violation of A.R.S. §§ 13–1904 and 13–604(K). On 12 December 1979, defendant was sentenced to 21 years imprisonment pursuant to A.R.S. §§ 13–604 and 13–702. Defendant now appeals both conviction and sentence. We have jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S.

We must consider three questions on appeal:

1. Did the trial court err in admitting evidence to impeach the defendant?
2. Did the trial court err in admitting evidence to impeach a defense witness?
3. Was defendant subjected to impermissible multiple punishment for the same act?

The facts necessary for a resolution of these issues are as follows. In the early morning hours of 5 March 1979, a man,

subsequently identified as the defendant, Michael Martinez, and a Daniel Mejia, robbed a U-Totem Store in west Phoenix. The testimony indicated that Martinez entered the store, picked out some merchandise and placed it on the counter next to the cash register. Daniel Mejia then entered the store with a sawed-off .22 caliber rifle. Mejia aimed the gun at the clerk and directed him to fill a brown paper bag with money. Meanwhile, Martinez served as a lookout, and upon Mejia's request, tore the store's surveillance camera off the wall. After the bag was filled with money, Mejia and Martinez left the store.

In the early morning hours of 8 March 1979, Martinez and Mejia attempted to rob another U-Totem Store in Phoenix. The pattern of conduct was the same. At first Martinez entered the store and after selecting some merchandise, took it to the counter. Mejia entered the store carrying a sawed-off .22 caliber rifle. He aimed the rifle at the clerk and directed her to fill a brown paper bag with money. This time, however, two customers entered the store while the robbery was in progress. The customers engaged in a struggle with Mejia and Martinez over control of the gun. The customers were able to obtain control of the gun and detain Martinez until the police arrived, at which time Martinez was taken into custody. Mejia fled and was not arrested.

After trial and a jury verdict of guilt to armed robbery, a dangerous offense, the defendant was sentenced by the trial judge to 21 years imprisonment, and the defendant appeals both the verdict and sentence.

## IMPROPER IMPEACHMENT OF THE DEFENDANT

Prior to trial on the 5 March robbery, the trial judge granted defendant's motion in limine precluding testimony concerning the attempted robbery of 8 March 1979. The trial judge determined that evidence of the subsequent bad act could be admissible under Rule 404(b), Arizona Rules of Evidence, 17A A.R.S., but since the probative value of the bad act evidence was substantially out-

weighed by the danger of unfair prejudice, it would be excluded under Rule 403. The prosecution was then precluded from introducing testimony during its case-in-chief concerning the 8 March 1979 attempted robbery.

During the State's case-in-chief, the U-Totem clerk identified the defendant as one of the perpetrators of the 5 March 1979 robbery. The State also introduced photographs of defendant and Mejia taken by the store's surveillance camera during the 5 March robbery, as well as the sawed-off rifle and defendant's coat seized at the 8 March 1979 attempted robbery. The State, in its case-in-chief, made no reference or allusion to the 8 March 1979 attempted robbery.

Defendant took the stand in his own defense. The defendant testified on direct examination that he was at home sleeping at the time of the 5 March 1979 robbery. On cross-examination, the prosecutor questioned the defendant on his association with Daniel Mejia. Defendant was indefinite, saying he knew Mejia only "vaguely," and he had only met Mejia "once when—last November, I think just briefly." On cross-examination, the prosecution sought to impeach defendant's testimony by asking defendant of his relationship with Mejia, a participant in the 5 March 1979 robbery, as well as the 8 March 1979 robbery. The defendant was also asked to look at one of the surveillance photographs taken on 5 March 1979; specifically defendant was directed to look at the rifle in that picture. As to the rifle, defendant was asked on cross-examination:

"Q  Where did you see it [the rifle]?

"A  Somebody else had it.

"Q  Where did you see it?

"A  It was in the store.

"Q  What store?

"A  Circle K, I think."

At the close of the defendant's case, the State was allowed to call Sharon Hunter, the U-Totem employee working at the scene of the 8 March 1979 robbery, as a rebuttal witness. She testified that Mejia

and defendant struggled with two customers for control of a .22 caliber rifle, which was identified as the gun used in the 5 March 1979 robbery. Additionally, she testified that defendant was wearing a coat identical to the coat he was wearing on 5 March 1979.

Defendant timely objected on the ground that such questions would necessarily involve the later attempted robbery of 8 March 1979, during which the rifle was taken and he was arrested, would violate the motion in limine previously granted, and would be evidence of the 8 March 1979 attempted robbery, a subsequent bad act.

In response, the State argued that the evidence should be admissible, not to go to the armed robbery of 8 March, but to show that the defendant, contrary to his testimony, was familiar with the weapon used in the 5 March robbery and taken in evidence after the 8 March robbery, and was acquainted with Mejia.

The trial judge denied the motion in limine stating:

"The Court feels that the defendant has opened the door, counsel, and that now by virtue of the State's right to [impeach], it is entitled to go into these areas."

Rule 403 of the Arizona Rules of Evidence, 17A A.R.S., gives the trial judge discretion to exclude admittedly relevant evidence. It provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, Rules of Evidence, 17A A.R.S.

■ The fact that the trial court previously ruled the evidence was inadmissible as prejudicial, does not mean the prejudice continues to outweigh its probative value throughout the trial. When the defendant, as here, "opens the door" by denying certain facts which the evidence, previously excluded, would contradict, he may not rely on the previous ruling that such evidence

will remain excluded. The evidence of the subsequent bad act was relevant on the issue of identity and common scheme or plan, and was a proper response to defendant's testimony that he knew Mejia only vaguely and was at home sleeping at the time of the robbery. See *State v. Brown*, 125 Ariz. 160, 608 P.2d 299 (1980); *State v. Padilla*, 122 Ariz. 378, 595 P.2d 170 (1979); *State v. Akins*, 94 Ariz. 263, 383 P.2d 180 (1963). We find no error.

## IMPEACHMENT OF A DEFENSE WITNESS

■ The State called Wanda Martinez to rebut defendant's statement on direct examination that he lived alone. Rather than testifying that Daniel Mejia and defendant were roommates, Ms. Martinez supported defendant's testimony.

The State then called Detective Herskovets. Without an objection by defendant, Detective Herskovets testified that either Ms. Martinez or her husband told him that defendant and Mejia were forced to vacate their apartment because some damage occurred during a party. Since defendant failed to object to Herskovets' testimony at the time of trial, and Herskovets' testimony was not of such a nature to constitute fundamental error, we find that the trial court did not commit reversible error by allowing Detective Herskovets to testify.

"Failure to object to questions, evidence, testimony, arguments, and instructions, waives these matters on appeal." *State v. Wilson*, 113 Ariz. 308, 310, 553 P.2d 235, 237 (1976); see *State v. Fears*, 116 Ariz. 494, 570 P.2d 181 (1977); *State v. Wilcynski*, 111 Ariz. 533, 534 P.2d 738, cert. den. 423 U.S. 873, 96 S.Ct. 141, 46 L.Ed.2d 104 (1975).

We find no error.

## MULTIPLE PUNISHMENT

■ Defendant was convicted of armed robbery pursuant to A.R.S. § 13–1904. Armed robbery is one of three types of robbery specified by statute. A.R.S. § 13–1902 provides for "simple" robbery, a class 4 felony. A.R.S. § 13–1903 defines aggrava-

ted robbery, a more serious class 3 felony, and armed robbery is defined by A.R.S. § 13–1904 as follows:

"§ 13–1904. Armed robbery; classification

"A. A person commits armed robbery if in the course of committing robbery as defined in § 13–1902, such person or an accomplice:

    1. Is armed with a deadly weapon; or

    2. Uses or threatens to use a deadly weapon or dangerous instrument.

"B. For the purposes of this chapter, exhibition in the course of committing armed robbery of an article fashioned or used in a manner to lead any reasonable person to believe it to be deadly or dangerous is presumed evidence of its deadly or dangerous character.

"C. Armed robbery is a class 2 felony."

Defendant argues that because he was convicted of armed robbery, a dangerous offense, he was impermissibly subjected to multiple punishment for the same act in violation of the Fifth Amendment of the United States Constitution, Article II, Section 10 of the Arizona Constitution, and A.R.S. § 13–116. Defendant contends that because the sawed-off rifle was exhibited during the 5 March 1979 robbery, he was subjected to two enhancements of punishment. First, defendant's violation of the law was raised from a class 4 felony, robbery under A.R.S. § 13–1902, to a class 2 felony, armed robbery under A.R.S. § 13–1904. Second, the sentence was increased pursuant to A.R.S. § 13–604(G) and (K) and A.R.S. § 13–702(D), when exhibition of the gun was considered as an aggravating factor in sentencing. A.R.S. § 13–604(G) and (K) reads:

"G. Upon a first conviction of a class 2 or 3 felony involving use or exhibition of a deadly weapon or dangerous instrument * * * the defendant shall be sentenced to imprisonment for not less than the sentence and not more than three times the sentence authorized in § 13–701 for the offense for which the person currently stands convicted, and shall not be eligible for suspension or commutation of sentence, probation, pardon or parole or release on any other basis until not less than two-thirds of the sentence imposed by the court has been served. * * * Upon imposing a sentence pursuant to this subsection the court shall impose as a presumptive term three-fourths of the median of the allowable range * * *. The presumptive term may be mitigated or aggravated within the range prescribed under this subsection pursuant to the terms of § 13–702, subsections C, D, and E. * * *

\*    \*    \*    \*    \*    \*

"K. The penalties prescribed by this section shall be substituted for the penalties otherwise authorized by law if the previous conviction or the dangerous nature of the felony is charged in the indictment or information and admitted or found by the trier of fact. * * * For the purposes of this subsection, 'dangerous nature of the felony' means a felony involving the use or exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury upon another." A.R.S. § 13–604.

And:

"B. Sentences provided in § 13–701 for a first conviction of a class 2 or 3 felony, except those felonies involving a use or exhibition of a deadly weapon or dangerous instrument or when the intentional or knowing infliction of serious physical injury upon another has occurred, may be increased by the court up to one hundred per cent or may be reduced by the court up to twenty-five per cent of the sentence prescribed for said offense. Such reduction or increase shall be based on aggravating and mitigating circumstances contained in subsections D and E of this section." A.R.S. § 13–702(B).

Our double punishment statute provides in relevant part:

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent. * * * " A.R.S. § 13–116.

A.R.S. §§ 13–1902–1904 are classification statutes. The legislature has determined that armed robbery is a relatively more serious offense than robbery pursuant to A.R.S. § 13–1902, a class 4 offense, or aggravated robbery, A.R.S. § 13–1903, a class 3 offense.

Of the twenty-four class 2 felonies, seven are drug crimes defined outside the criminal code. See A.R.S. §§ 32–1996(C), 36–1002.01–1002.04, and 36–1002.07–1002.08. Of the seventeen Title 13 class 2 felonies, five are sexual crimes involving minors, A.R.S. §§ 13–1405, 13–1410–1411, 13–3552–3553, while four more are contained in chapter 23 entitled "Organized Crime and Fraud." See A.R.S. §§ 13–2303, 13–2307–2308, 13–2310. The remaining eight class 2 felonies are the most serious crimes in our criminal code other than first degree murder. They are: attempted first degree murder (A.R.S. § 13–1001), second degree murder (A.R.S. § 13–1104), kidnapping (A.R.S. § 13–1304), sexual assault (A.R.S. § 13–1406), first degree burglary of a residential structure (A.R.S. § 13–1508), arson of an occupied structure (A.R.S. § 13–1704), theft by extortion by threatening physical injury by means of a deadly weapon or dangerous instrument (A.R.S. § 13–1804), and armed robbery (A.R.S. § 13–1904). It is readily apparent that each of the eight listed crimes relate to conduct that could result in death of an innocent party, but only three are necessarily "dangerous" within the meaning of A.R.S. § 13–604(K). See A.R.S. § 13–1104 (second degree murder), § 13–1508 (first degree burglary of a residential structure), and § 13–1904 (armed robbery). Other offenders who violate class 2 felony statutes may, by their conduct, be "dangerous."

In A.R.S. § 13–604, each class 2 felony is subclassified as a "dangerous" felony or a non-dangerous felony. The presumptive sentence, the range of punishment, and the other circumstances of punishment for non-dangerous offenders are determined in accordance with A.R.S. §§ 13–701 and 13–702(A) and (B), and are generally less than dangerous offenses. If, however, the dangerous nature of the felony was alleged in the indictment and found to exist by the trier of fact, the offender would be subject to a higher range of punishment than first-time non-dangerous offenders, 7 years to 21 years versus 5.25 years to 14 years, and a higher presumptive sentence, 10.5 years versus 7 years.

In the instant case, the fact that a gun was used classified the crime under A.R.S. § 13–1904, armed robbery, and because of the manner in which that gun was used, A.R.S. § 13–604(G) and (K), that punishment was enhanced as prescribed in A.R.S. §§ 13–701 and –702.

The defendant is not being punished twice for the same offense, he is being convicted for a more serious crime because he used a gun, and his punishment is enhanced because of the manner in which he used that gun. The double punishment statute, A.R.S. § 13–116, applies only when the defendant is found guilty of two or more crimes based on the same acts. See *State v. Rodriguez*, Ariz., 612 P.2d 1067 (App.1980). But defendant argues that the present sentencing scheme violates the double jeopardy prohibition in the Fifth Amendment and Article II, Section 10 of the Arizona Constitution because a single element, exhibition of a gun, can be used more than once in affixing punishment. We have recently discussed and disposed of these contentions as follows:

" * * * Under § 13–604(G), the range of sentence required when a gun is present is not a decision within the discretion of the trial judge; however, under § 13–702(D)(2), the quality and circumstances of the act committed with the gun may be considered, such as, did the manner of using the gun put others in great fear or danger. The quality of the act, as aggravation, will never subject the defendant to punishment greater than that provided in the enhanced sentencing provisions and is not double punishment.

"If the presence of a deadly weapon, as an element of the crime or otherwise, moves the legislature to impose more severe punishment for the offense, we must

abide by the legislative determination. *State v. Church*, [109 Ariz. 39, 504 P.2d 940 (1973)]; *State v. Herkshan*, [105 Ariz. 394, 465 P.2d 587 (1970)]. The punishment may be severe and it may be a single element of the crime which mandates the legislative decision to make probation unavailable and a minimum prison term mandatory, but that does not mean a defendant is being punished time and time again for a single act. It merely defines a single harsh punishment for a single severe crime." *State v. Bly,* 127 Ariz. 370, 621 P.2d 279 (1980).

We have reviewed the record for fundamental error as required by A.R.S. § 13–4035; *State v. Powell*, 5 Ariz.App. 51, 423 P.2d 127 (1967); and we find no reversible error in the judgment.

Affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.