NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

BENJAMIN WILLIAM WALSH, *Appellant*.

No. 1 CA- CR 14-0189

FILED 5-5-2015

Appeal from the Superior Court in Maricopa County
No.  CR2013-001171
The Honorable Pamela D. Svoboda, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza Ybarra
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Margaret Green
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Kenton D. Jones joined.

---

**K E S S L E R**, Judge:

¶1 Benjamin William Walsh ("Walsh") appeals his conviction for aggravated assault. He argues the superior court abused its discretion when it refused to grant Walsh's theory of defense instruction to the jury and when it allowed the State to introduce impeachment evidence of an alleged prior instance of Walsh being involved in a fight. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 After repairing the brakes on a car in early January 2012, JY performed a "brake stand" while test driving the car near his home in a residential neighborhood. Walsh, who lived nearby approached JY and reprimanded him for driving dangerously. Although he believed the brake stand was harmless, JY apologized.

¶3 The following week, Mr. And Mrs. R. held a party at their house in the same neighborhood. Walsh and JY both attended the party. Confrontation ensued between Walsh and JY regarding the brake stand maneuver. Both men were asked to leave the party.

¶4 Walsh claimed that while leaving the party, JY punched him, surprising him and causing him to stumble. JY asserted that he merely slapped Walsh's hand after Walsh threw his beer at JY. Walsh alleged that he ran to his home down the street, followed by JY. Ten minutes later, Walsh returned to the party to retrieve his house keys, but Mr. R. prevented Walsh from entering the party. Unable to retrieve his keys, Walsh called his father for help. Walsh's father, mother, brother, and sister arrived at the party shortly thereafter. Walsh and his family stood across the street from the party, yelling "like an angry mob."

¶5 Mrs. R. went outside and encouraged Walsh and his family to return home. Instead of returning home, Walsh's mother and sister shouted at Mrs. R. and began circling her. JY exited the party to help Mrs. R., but Walsh's father charged JY and pepper-sprayed him. Walsh's father claimed

2

he sprayed JY to stop him from charging. Blinded by the pepper spray, JY swung wildly. JY struck the father, who hit his head and blacked out in the street. Walsh claimed JY lunged at his father. Walsh then punched JY seven or eight times. While JY was blinded by pepper spray, Walsh, his mother, sister, and brother dragged JY across the street, beating and kicking him. Seeing JY with his head on the curb bleeding, Mrs. R. called 911. While on the phone, she saw Walsh and his family "pounding their feet into [JY's] head."

¶6        JY was admitted to the hospital for four days where doctors determined that he sustained a fracture to his orbital bone. He needed surgery to repair the bone. A mesh sling and metal plate were inserted to hold his eyeball in place. JY now has permanent vision problems. He also suffered a fractured nose and two broken teeth. JY's medical expenses totaled approximately $80,000.

¶7        The State charged Walsh and each of his family members with aggravated assault. The cases were consolidated, and Walsh and his family members were tried together. The jury convicted Walsh of aggravated assault. The trial court suspended Walsh's sentence and placed him on probation for four years. As part of Walsh's probation, he was ordered to spend twelve months in jail.

¶8        Walsh filed a timely notice of appeal on March 17, 2014. This Court has jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1)(2003), 12-2101 (Supp. 2014), 13-4031 (2010), and 13-4033 (2010).

**DISCUSSION**

I.        Walsh's Theory of Defense Jury Instruction

¶9        Walsh argues the trial court abused its discretion when it refused to grant his theory of defense jury instruction. We review a trial court's refusal to grant a jury instruction for abuse of discretion. *State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995). Absent an abuse of discretion, we will not reverse. *Id.* We find no reversible error.

¶10        Walsh asserts his theory of defense was reasonably supported by the evidence and it was reversible error for the trial court to refuse his theory of defense jury instruction. Although Walsh was entitled to an instruction on any theory reasonably supported by the evidence, *State v. Shumway*, 137 Ariz. 585, 588, 672 P.2d 929, 932 (1983), the trial court is not required to give a proposed instruction when its substance is adequately

covered by other instructions. *State v. Mott*, 187 Ariz. 536, 546, 931 P.2d 1046, 1056 (1997). The trial court need not give every instruction requested. *State v. Rodriguez*, 192 Ariz. 58, 61, ¶ 16, 961 P.2d 1006, 1009 (1998). Instead, we review whether the instructions adequately communicated the law applicable to the case. *Id.*

¶11        Walsh requested the following jury instruction:

Benjamin Walsh asserts that he was justified in using physical force against [JY] to protect himself and/or one or more of Benjamin Walsh's family members (William Walsh, Karen Walsh, Jacob Walsh and/or Sarah Walsh) because, under the circumstances, Benjamin Walsh reasonably believed that physical force was immediately necessary to protect himself and/or his family members against the use or attempted use of physical force by [JY].

¶12        The trial court provided the following jury instructions:

Justification for Self-Defense

A defendant is justified in using or threatening physical force in self-defense if the following two conditions existed:

1. A reasonable person in the situation would have believed that physical force was immediately necessary to protect against another's use or apparent attempted or threatened use of unlawful physical force; and

2. The defendant used or threatened no more physical force than would have appeared necessary to a reasonable person in the situation.

Self-defense justifies the use or threat of physical force only while the apparent danger continues, and it ends when the apparent danger ends. The force used may not be greater than reasonably necessary to defend against the apparent danger.

The use of physical force is justified if a reasonable person in the situation would have reasonably believed that immediate physical danger appeared to be present. Actual danger is not necessary to justify the use of physical force or deadly physical force in self-defense.

You must decide whether a reasonable person in a similar situation would believe that: physical force was immediately necessary to protect against another's use, attempted use, threatened use, apparent attempted use, apparent threatened use, of unlawful physical force; or

You must measure the defendant's belief against what a reasonable person in the situation would have believed.

The threat or use of physical force is not justified:

1. In response to verbal provocation alone;

2. If the defendant provoked the other's use of unlawful physical force, unless:

> a. The defendant withdrew from the encounter or clearly communicated to the other person the defendant's intent to withdraw, reasonably believing that the defendant could not withdraw from the encounter; and

> b. The other person nevertheless continued or attempted to use unlawful physical force against the defendant.

The State has the burden of proving beyond a reasonable doubt that the defendant did not act with such justification. If the State fails to carry this burden, then you must find the defendant not guilty of the charge.

Justification for Self-Defense of a Third Person

A defendant is justified in using or threatening physical force in defense of a third person if the following two conditions existed:

1. A reasonable person in the situation would have believed that physical force was necessary to protect against another's use, attempted use, apparent attempted use, threatened use of unlawful physical force against a third person; and

2. The defendant used or threatened no more physical force than would have appeared necessary to a reasonable person in the situation.

> Defense of a third person justifies the use or threat of physical force only while the danger continues, and it ends when the danger ends. The force used may not be greater than reasonably necessary to defend against the danger.
>
> Actual danger is not necessary to justify the use of physical force in defense of a third person.
>
> The use of physical force is justified if a reasonable person in the situation would have reasonably believed that immediate physical danger appeared to be present.
>
> You must decide whether a reasonable person in a similar situation would believe that:
>
> 1. Physical force was necessary to protect against another's use, attempted use, apparent attempted use, threatened use of unlawful physical force against a third person.
>
> You must measure the defendant's belief against what a reasonable person in the situation would have believed.
>
> The State has the burden of proving beyond a reasonable doubt that the defendant did not act with such justification. If the State fails to carry this burden, then you must find the defendant not guilty of the charge.

The court's instructions closely follow the Revised Arizona Jury Instructions ("RAJI") and Arizona Revised Statutes. *See* RAJI Stat. Crim. §§ 4.04, 4.06 (2013); A.R.S. §§ 13-404 (2010), -406 (2014).

¶13        Walsh does not contest the substance of the given instructions, but asserts the court's self-defense instructions were too lengthy and that his theory of defense instruction would have assisted the jury by narrowing their focus to his defense. Overall, the jury instructions totaled fourteen pages. The self-defense instructions only accounted for two of those pages. Inserting Walsh's theory of defense into the jury instructions that Walsh alleges were already too lengthy would have made the instructions even longer. Moreover, five defendants were on trial and Walsh was not the only defendant claiming self-defense. Inserting a theory of defense for only Walsh, when there were multiple defendants, could have confused the jury as to which defendants were asserting self-defense. Rather than confuse the jury, the trial court provided instructions for self-defense and self-defense of a third person in understandable terms and

6

thereby adequately informed the jury of the applicable law relevant to all defendants on trial. *See State v. Rosas-Hernandez*, 202 Ariz. 212, 220, ¶ 31, 42 P.3d 1177, 1185 (App. 2002).

**¶14** Walsh further argues the trial court abused its discretion because it refused his jury instruction for an irrational reason. Walsh contends the court irrationally stated that it never provides a theory of defense instruction. Walsh takes the court's statement out of context. In response to Walsh's jury instruction request, the court stated, "I don't ever add in people's theories of the case. I think that they should get the jury instructions and you all argue whether they apply or don't as to each defendant . . . ." The court rejected Walsh's theory of defense instruction because it was not a statement of the law. Rather, Walsh's theory of defense jury instruction was an argument that more appropriately belonged in closing argument. *See State v. Martinez*, 175 Ariz. 114, 153, 854 P.2d 147, 120 (App. 1993) ("Legal principles conveyed to the jury . . . should neither be argumentative nor pejorative; such principles should be neutral and written in plain English so they do not confuse the jury."). Furthermore, we may examine closing arguments when assessing the adequacy of jury instructions. *State v. Tarr*, 235 Ariz. 288, 293, ¶ 14, 331 P.3d 423, 428 (App. 2014). During closing arguments, Walsh's counsel referred to Walsh's theory of defense several times. By narrowing the jury's focus to Walsh's theory of defense, counsel's closing argument accomplished what Walsh requested in his theory of defense instruction.

**¶15** For these reasons, we find no abuse of discretion in the trial court's decision to refuse Walsh's theory of defense jury instruction.

II. Admission of Walsh's Prior Acts

**¶16** In response to a question on direct examination, Walsh stated, "[W]e're not fighters." Following Walsh's testimony, the State informed the court and the defense it intended to impeach Walsh showing Walsh's previous altercations. The trial court allowed the State to cross-examine Walsh about a 2005 incident in which Walsh may have had an altercation with police. However, the court refused to admit the report itself as extrinsic evidence. On cross-examination, Walsh denied all the alleged facts about the altercation asked by the State except that he had been tazed by police, but he claimed that was an accident. Walsh argues the court abused its discretion in permitting the State to impeach him because: 1) the evidence was used to show his predilection to get into fights; 2) the evidence was not relevant to fighting; 3) the State violated its disclosure requirements; and 4) the incident was too remote in time to establish

Walsh's character for untruthfulness. We analyze the court's decision for an abuse of discretion. *State v. Murray*, 184 Ariz. 9, 30, 906 P.2d 542, 563 (1995). We will affirm the trial court's decision if it was correct, even if it was rendered for an erroneous reason. *Zuck v. State*, 159 Ariz. 37, 42, 764 P.2d 772, 777 (App. 1988).

¶17            First, Walsh asserts the cross-examination was improper under Arizona Rule of Evidence 404(b) to attempt to prove Walsh's conduct conformed with a prior act of fighting, and inadmissible under Rule 608(b) to prove Walsh's character for untruthfulness. Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 608(b) provides that prior conduct may be used on cross-examination to prove a witness's character for untruthfulness. The trial court expressly allowed cross-examination regarding the 2005 incident on the basis it was relevant to the untruthfulness of Walsh's testimony that he is not a fighter. We conclude there was no abuse of discretion.

¶18            Arizona cases are divided on what rule of evidence permits a party to cross-examine a witness on prior acts to impeach the witness's credibility. At least one case implies that such evidence is admissible under Rule 608. *State v. Woods*, 141 Ariz. 446, 450, 687 P.2d 1201, 1205 (1984) (determining trial court had discretion under Rule 608(b) to allow cross-examination about specific acts of misconduct if they are probative of truthfulness provided the acts are not proved by extrinsic evidence and the court weighs any probative value against any prejudice); *see State v. Martinez*, 127 Ariz. 444, 446-47, 622 P.2d 3, 6 (1980) (upholding admission of prior bad acts of robbery to show both common plan and to impeach defendant after he opened the door by denying certain facts). However, in *State v. Tovar*, we held that admission of cross-examination of prior handgun use after the defendant denied such use was permissible not under Rule 608, but simply to show the witness lied to the jury. 187 Ariz. 391, 392-93, 930 P.2d 468, 469-70 (App. 1996). We need not resolve this issue here. Generally, a party may cross-examine a witness to impeach his credibility when the witness has testified to a fact and such fact is contradicted by prior acts of the witness. *Martinez,* 127 Ariz. at 446-47, 622 P.2d at 6; *State v. Kuhnley*, 74 Ariz. 10, 19, 242 P.2d 843, 849 (1952) (holding that State was permitted to introduce extrinsic evidence showing prior conduct by defendant to contradict material evidence testified to by defendant). Thus, the court did not abuse its discretion by allowing the State to cross-examine Walsh on prior fights.

¶19        Related to this issue, Walsh relies on the State's closing argument that Walsh "has a history of rushing people." Walsh objected to the statement. The court sustained the objection, ordered the statement be stricken from the record, and ordered the jury to disregard the statement. The court also instructed the jury that "[e]vidence of an incident involving [Walsh] allegedly occurring in October 23, 2005 has been presented. You may consider this only if you find it relates to [Walsh's] credibility. You must not consider this alleged incident to determine [Walsh's] character or whether he committed the charged offense." Although the prosecutor's closing arguments attempting to use the prior incident as evidence of a predilection to violence are regrettable, in the absence of any evidence to the contrary, we presume the jury followed the trial court's instruction not to consider such evidence except as to Walsh's credibility. *State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996).

¶20        Second, Walsh argues the 2005 incident is not relevant to his statement that he is not a fighter because there is no evidence that any hitting or striking occurred. Walsh denied he was involved in any fight and that in a prior incident the police accidentally tazed him. The court found this to be evidence of fighting behavior and therefore admissible to impeach Walsh. We find the court did not abuse its discretion because the evidence related to impeaching Walsh for testifying that he is not a fighter.

¶21        Third, Walsh asserts the State violated its requirements under Arizona Rules of Criminal Procedure 15.1(b)(7) by not disclosing all prior acts of the defendant that the State intended to use at trial. The purpose of Rule 15.1 is to give "full notification of each side's case-in-chief so as to avoid unnecessary delay and surprise at trial." *State v. Martinez-Villareal*, 145 Ariz. 441, 447, 702 P.2d 670, 676 (1985). The State did not intend to use Walsh's prior act until Walsh asserted he was not a fighter. Once Walsh made the statement, it opened the door and the State informed the defense and the court of its intent to impeach Walsh. The State was not required to disclose names of rebuttal witnesses prior to trial when those statements were not encompassed by pretrial disclosure of defenses filed by Walsh. *State v. Sullivan*, 130 Ariz. 213, 216-17, 635 P.2d 501, 504-05 (1981). Thus, there was no violation based on a failure to disclose.

¶22        Finally, Walsh argues the 2005 incident was too remote to establish his character for untruthfulness. The length of time between the charged crime and the prior act goes to the weight of the evidence and not its admissibility. The supreme court has affirmed admission of prior acts when there was six years between the act and the charged crime. *State v. Van Adams*, 194 Ariz. 408, 417-18, ¶ 24, 984 P.2d 16, 24-25 (1999) (holding

not too remote in time under 404(b)). Moreover, to the extent the evidence might have been admissible under Rule 608(b), that rule is drawn from the federal rule, so the Federal Advisory Committee's notes are instructive. *Woods*, 141 Ariz. at 450 n.1, 687 P.2d at 1205 n.1. The Advisory Committee removed "not remote in time" from Rule 608(b) because the phrase was "unnecessary and confusing." Fed. R. Evid. 608 advisory committee's note. The Advisory Committee eliminated the phrase to emphasize the discretionary power of the court. *Id.* Here, the trial court found that Walsh's prior act was not remote in time and was thus admissible. The court allowed the State to use the evidence to impeach Walsh for testifying that he was not a fighter because the evidence was relevant to truthfulness under Rule 608(b). We defer to the trial court's decision and find no abuse of discretion.

**CONCLUSION**

¶23        For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: ama