NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DAVID LEE ALEXANDER, *Appellant.*

No. 1 CA-CR 15-0683
FILED 12-13-2016

Appeal from the Superior Court in Maricopa County
No. CR2013-105034-001
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Elizabeth B. N. Garcia
*Counsel for Appellee*

Stephen L. Crawford PLLC, Phoenix
By Stephen L. Crawford
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Peter B. Swann and Judge Patricia A. Orozco joined.

---

**G O U L D**, Judge:

¶1          David Lee Alexander ("Defendant") appeals his convictions and sentences for two counts of possession of dangerous drugs and possession of narcotic drugs, one count of possession or use of marijuana, and two counts of possession of drug paraphernalia. Defendant argues the court erred in denying his motion to suppress, and he challenges the court's decision to allow the State to impeach him with an unsanitized prior felony conviction. For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2          On May 30, 2012, police officers observed multiple people enter and exit rooms 240 and 241 at a motel. After Officer Linker observed a man walk out of room 241 and engage in what appeared to be a "hand-to-hand" drug transaction, he proceeded to the motel's office to inform management of the suspicious activity. Based on the officer's report, the motel manager requested Officer Linker's assistance in removing the occupants from rooms 240 and 241. Officer Linker returned to watching the rooms, and he observed Defendant in front of room 241 opening the door. Officer Linker approached Defendant and asked whether he could enter the room to speak with him. Defendant consented.

¶3          Officer Linker entered the room with Defendant and advised him about the suspicious activity he observed outside the room. Defendant denied having any illegal drugs, and he granted Officer Linker's request to search the room. Officer Linker immediately observed a marijuana pipe on top of a nightstand. Defendant admitted the pipe belonged to him and that he smokes marijuana.

---

[1]      We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant. *State v. Harm,* 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (internal citation omitted).

¶4        With Defendant's consent, Officer Linker continued to search the room. Officer Linker discovered a one-inch piece of marijuana, which Defendant admitted was his. Officer Linker also found a methamphetamine pipe, a plastic baggie containing methamphetamine, a crack pipe along with several rocks of crack cocaine, and two baggies of pills that subsequently were determined to be Oxycodone and Alprazolam. Defendant admitted all these items belonged to him, and explained that he sold drugs "to get by and to make money."

¶5        Defendant was charged with two counts of possession of dangerous drugs for sale, two counts of possession of narcotic drugs for sale, two counts of possession of drug paraphernalia, and one count of possession or use of marijuana. At trial, the jury found Defendant guilty on both the marijuana and paraphernalia offenses. As for the remaining charges, the jury found Defendant guilty of the lesser-included offenses of possession of dangerous drugs and possession of narcotic drugs. The court imposed concurrent presumptive prison terms, the longest of which is 10 years. Defendant timely appealed.

## DISCUSSION

I.    Motion to Suppress

¶6        Defendant moved to suppress the evidence Officer Linker obtained from the motel room, arguing Officer Linker's warrantless and nonconsensual entry into the room was unconstitutional. The court held an evidentiary hearing and denied the motion, finding Defendant consented to the search of the motel room. Defendant challenges the court's finding of consent.

¶7        In reviewing the denial of a motion to suppress, we review only the evidence submitted at the suppression hearing, and we view those facts in the manner most favorable to upholding the trial court's ruling. *State v. Blackmore*, 186 Ariz. 630, 631 (1996). The trial court determines the credibility of witnesses. *State v. Ossana*, 199 Ariz. 459, 461, ¶ 7 (App. 2001). We defer to the trial court's determinations of the credibility of testifying officers and the reasonableness of the inferences they drew. *State v. Gonzalez–Gutierrez*, 187 Ariz. 116, 118 (1996). But we review the trial court's legal decisions *de novo*. *Id.* A trial court's ruling on a motion to suppress will not be reversed on appeal absent "clear and manifest error," the equivalent of an abuse of discretion. *State v. Newell*, 212 Ariz. 389, 396 n.6, ¶ 22 (2006).

¶8            The Fourth Amendment protects people from unreasonable searches and seizures. *Scott v. United States,* 436 U.S. 128, 137 (1978). Generally, a warrantless search is *per se* unreasonable under the Fourth Amendment. *State v. Branham,* 191 Ariz. 94, 95 (App. 1997) (citing *State v. Castaneda,* 150 Ariz. 382, 389 (1986)).   One exception to the warrant requirement is a consensual search. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973).  The State has the burden of proving by a preponderance of the evidence that a defendant's consent was "freely and voluntarily given." *State v. Valenzuela,* 239 Ariz. 299, 302, ¶ 11 (2016) (quoting *Schneckloth,* 412 U.S. at 222).

¶9            Defendant does not argue his consent was involuntary; rather, he contends he never gave consent to Officer Linker.  As a result, the State was required to show, by a preponderance of the evidence, that Defendant consented to the search. *See State v. Swanson*, 172 Ariz. 579, 583 (App. 1992) ("The trial court's factual determinations on the issue of giving consent will not be overturned unless clearly erroneous.").

¶10            The record supports the superior court's ruling that Defendant consented to the search of his room.  Officer Linker testified that when he approached room 241 and first made contact with Defendant, Defendant "was standing basically halfway inside the door."   Officer Linker further testified:

> When I got there at [Defendant's] room, I basically asked him for his permission to enter the room so I could talk to him about some things that I had observed. He basically told me it was okay, to come inside the room. He gave me his consent. He did not tell me, no, in any way. He did not put his body in front of the door, and say he wished I would not come inside. He was actually, was very cooperative and allowed me inside the room.

> I don't remember the exact words that he used, whether it be, yes, or come on in, but he allowed me inside the room. I didn't have to push my way in. I didn't have to use an authoritative tone or anything. I basically just asked him if he was on board so I could come inside and speak to him about what I had observed, and he told me it was okay.

¶11            Officer Linker testified that he entered the room and spoke with Defendant about the suspicious activity he observed outside the room. Officer Linker asked whether anything illegal was in the room, Defendant answered there was not, and Officer Linker then asked whether he could

"take a quick look around just to make sure." Defendant said "that would be fine." Each time Officer Linker found a suspicious drug-related item, he would confront Defendant with the discovery and ask permission to continue searching. And each time, according to Officer Linker's testimony, Defendant either did not object or he responded affirmatively.

¶12 Officer Linker's testimony shows that Defendant consented to his entry and the search of the motel room. However, Defendant argues Officer Linker's testimony that "[Defendant] *basically* told me it was okay, to come inside the room[]" (emphasis added) is insufficient to show consent because this testimony did not constitute "clear and positive evidence in unequivocal words or conduct" expressing consent. In support of this argument, Defendant relies on *State v. Canez*, 202 Ariz. 133 (2002) and *State v. Kananen*, 97 Ariz. 233 (1965).

¶13 Defendant's reliance on *Canez* and *Kananen* is misplaced. Both *Kananen* and *Canez* were abrogated by the adoption of Arizona Rule of Criminal Procedure 16.2(b), which replaced the "clear and positive evidence" standard set forth in *Kananen* with the current "preponderance of evidence" standard. *See Valenzuela*, 239 Ariz. at 302-03 n.1, ¶ 11.

¶14 Defendant also claims that Officer Linker's testimony was insufficient because he prepared conflicting reports in this case. Defendant claims that in Officer Linker's original report, he stated that Defendant "did not decline [Officer Linker's request to enter the motel room.]" However, in Officer Linker's supplemental reported submitted several months later, Officer Linker stated that "[Defendant said] okay" to the entry and search of the room.

¶15 Defendant's argument goes to the credibility and weight of Officer Linker's testimony. These are matters solely within the province of the superior court; we do not reweigh the evidence or the credibility of witnesses on appeal. *See State v. Toney*, 113 Ariz. 404, 408 (1976).

¶16 The superior court's finding that Defendant consented to Officer Linker's search of the motel room is supported by the record. We find no error.

II.     Prior Felony Conviction

¶17 Pursuant to Rule 609, the State sought to admit two historical felony convictions for impeachment purposes should Defendant testify at trial. The first felony was Defendant's Arizona conviction for the sale or transportation of narcotic drugs ("2006 Conviction"), and the second was a

Nevada conviction for possession of a controlled substance with intent to sell ("2014 Conviction").

¶18 The court denied the State's request to admit the 2014 Conviction on the grounds it was unfairly prejudicial under Rule 403. Regarding the 2006 Conviction, the court granted the State's request to impeach Defendant with a sanitized version of the conviction, e.g., the State could not reference the fact the conviction was for sale or transportation of drugs. In clarifying its ruling, the court stated:

> So, therefore, [the 2006 Conviction] will just be [a] felon[y] with no reference to crimes unless the defendant says he would never sell drugs in which case -- and I'm going to go make this clear -- in which case – I'm not saying defendant would do this, but if he does say, I would never sell drugs, the 2014 comes in too because that's exactly the same thing and so then all bets are off, because I can't allow him to present false testimony to the jury.
>
> So I just want to make it very clear, everything is redacted and the 2014 is not coming in, but if he opens the door, it's coming in. Okay? I just want everyone to understand my ruling before we go down that road. Okay?

¶19 Defendant testified. During his redirect examination, defense counsel asked, "Mr. Alexander, are you a drug dealer?" Defendant answered, "No." At a subsequent sidebar conference, the parties argued about whether Defendant "opened the door" in light of the court's ruling regarding the admissibility of the 2014 Conviction. The court agreed with the State that Defendant had opened the door. The court ultimately ruled, however, that evidence of the 2014 Conviction was unduly prejudicial under Rule 403, but allowed the State to impeach Defendant with the fact the 2006 Conviction was for sale or transportation of narcotic drugs.

¶20 Defendant argues the court erred in determining he "opened the door" to the unsanitized 2006 Conviction. Defendant contends his testimony that he is not a drug dealer did not violate the court's admonishment. Thus, according to Defendant, he did not testify falsely, and the court erred in permitting the State to impeach him with additional information regarding the 2006 Conviction. We review for an abuse of discretion. *State v. Green*, 200 Ariz. 496, 498, ¶ 7 (2001).

¶21 We find no abuse of discretion. Defendant did not specifically testify that he "would never" sell drugs. However, he made the assertion

that he is not a drug dealer, when in fact he was convicted in 2006 for a crime involving the sale and transportation of drugs. Additionally, Defendant's denial that he was a drug dealer directly contradicted Officer Linker's testimony that Defendant told him at the motel room he "sold drugs[.]"

¶22 Defendant's testimony opened the door to evidence concerning his truthfulness about his prior drug sales/dealings. As a result, the court acted within its discretion in allowing the State to impeach Defendant with his 2006 Conviction, which was probative on this issue. *See* Ariz. R. Evid. 609(a)(1)(B) (evidence of a defendant's felony conviction must be admitted to attack his or her character for truthfulness if the probative value of the evidence outweighs its prejudicial effect); *State v. Martinez*, 127 Ariz. 444, 447 (1980) (stating "[t]he fact that the trial court previously ruled the evidence was inadmissible as prejudicial, does not mean the prejudice continues to outweigh its probative value throughout the trial," and when a defendant "opens the door by denying certain facts which the evidence, previously excluded, would contradict, he may not rely on the previous ruling that such evidence will remain excluded."); *State v. Cook*, 172 Ariz. 122, 124–25 (App. 1992) (upholding the admission of otherwise inadmissible testimony when the defendant opened the door, making the evidence "highly relevant and admissible," and the testimony was "elicited solely for the purpose of rebutting" the misimpression created by the defendant).

¶23 Moreover, the court properly instructed the jury not to consider Defendant's prior convictions as substantive evidence of his guilt of the charged crimes. Not only do we presume jurors follow their instructions, *Newell*, 212 Ariz. at 403, ¶ 68, but the record reflects the jury did indeed follow the foregoing instruction; the jury did not convict Defendant of the charged "possession for sale" offenses, returning guilty verdicts only for the lesser-included offenses of possession of illegal drugs.

## CONCLUSION

¶24        Defendant's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA